No. 05-433

IN THE SUPREME COURT OF THE STATE OF MONTANA

2006 MT 190

STATE OF MONTANA,

        Plaintiff and Respondent,

  v.

ROBERT LEE BROWNING,

        Defendant and Appellant.

APPEAL FROM:    The District Court of the Twentieth Judicial District,
In and For the County of Lake, Cause No. DC 04-37,
Honorable Deborah Kim Christopher, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

            Chad Wright, Appellate Defender, Helena, Montana

            Peter Lacny, University of Montana Criminal Defense Clinic,
            Missoula, Montana

        For Respondent:

            Honorable Mike McGrath, Attorney General; Jennifer Anders, Assistant
            Attorney General, Helena, Montana

            Robert Long, County Attorney, Polson, Montana

                      Submitted on Briefs:  June 14, 2006

                               Decided:  August 16, 2006

Filed:

                        _____
                                 Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1    On April 12, 2004, the State of Montana charged Robert Lee Browning with driving under the influence (felony) (DUI), obstructing a police officer (misdemeanor), driving while privilege to do so is suspended or revoked (misdemeanor), and failure to carry proof of insurance (misdemeanor). After Browning provided proof of insurance, the State dropped the last charge. A year and three attorneys later, Browning appeared *pro se* before the Twentieth Judicial District Court, Lake County, and pled guilty. Because the DUI was Browning's sixth DUI offense and he had prior convictions for bail jumping, the court sentenced Browning as a persistent felony offender to twenty years, with the entire sentence suspended except for time served through completion of the WATCH program. Browning subsequently filed a motion to withdraw his guilty plea, contending that his plea was involuntary because he did not receive effective assistance of counsel.

¶2    The issue on appeal is whether the District Court denied Browning assistance of counsel and therefore erred when it denied Browning's motion to withdraw his guilty plea?

¶3    We reverse.

## BACKGROUND

¶4    The District Court assigned three attorneys to represent Browning during the year-plus that Browning's case moved through the lower court, none of whom ultimately represented Browning when he pled guilty. The first lawyer, Larry Nistler, withdrew

2

from the case, citing deterioration of the attorney-client relationship to the point where new counsel would better serve Browning's best interests. The second attorney, Sean Hinchey, was removed after Browning expressed distrust for him, specifically because Hinchey "tried to convince" Browning's wife to talk Browning into accepting a plea agreement from the State. The court appointed a third lawyer, Lane Bennett, whom Browning dismissed minutes before a scheduled trial in anticipation of hiring private counsel.

¶5 Throughout proceedings, Browning repeatedly expressed dismay and frustration with his court-appointed attorneys for not obtaining certain discovery. On the day the District Court dismissed Bennett as counsel, Browning stated that while he believed Bennett was a "professional," there were "certain things" in his case that he had requested and not received. The court told Browning that it believed the evidence Browning wanted did not exist and then explained in detail the consequences Browning faced in terminating his third court-appointed attorney. The court made clear that while Browning had every right to hire any attorney of his choosing, Bennett would be the last court-appointed defender on the case. Browning stated that he understood the potential ramifications of terminating Bennett, but that he nonetheless wanted to proceed without Bennett because he intended to hire a private attorney, Rebecca Dupuis, to represent him.

¶6 The following discussion, in pertinent part, transpired between the court and Browning on the day that Browning's third attorney, Bennett, was terminated:

3

THE COURT: . . . The Court is significantly concerned about you proceeding without representation. However, you certainly have the right to either represent yourself or to hire private counsel.

. . . .

. . . [I]f Ms. Dupuis intends to represent you, that's certainly your right. But she needs to be prepared to go to trial in 20 minutes. And I'm wondering, based on your request, where she is, if you intend to proceed with Ms. Dupuis. If not, then the Court would expect that you intend to represent yourself.

And before I'm going to remove Mr. Bennett off this case, I want to make very, very certain that you understand all of the dangers and disadvantages of representing yourself. Mr. Bennett has outlined some of those.

. . . .

So at this point is it your intention, then, to proceed with Ms. Dupuis, to represent yourself or to continue with Mr. Bennett as your attorney?

BROWNING: Well, I want Ms. Dupuis.

THE COURT: Well, she's not here. And you have a trial in 15 minutes.

. . . .

The only way I'm going to grant you a continuance to allow Ms. Dupuis to appear for you is if you waive speedy trial, sir. You have a trial date right now at nine o'clock, in 15 minutes, and I have 40 jurors sitting out there.

. . . .

. . . Mr. Browning, you have two options, sir, at this point in time. The only way that you can proceed with Ms. Dupuis as your attorney is to waive your right to speedy trial, obtain a continuance and allow her to be present. The county attorney has just attempted again to call her. It's now

4

12 minutes to nine o'clock, which is the time set for trial, and there's no answer at her office.

. . . .

BROWNING:  I want the continuance.

THE COURT:  You want the continuance.

. . . .

BROWNING:  Yes, Your Honor.  I'm going to continue.

THE COURT:  You want the continuance.

BROWNING:  Yes.

THE COURT:  And as I indicated, you want that continuance so that Ms. Dupuis can represent you.

BROWNING:  Yes.

THE COURT:  All right.  Mr. Bennett, you are removed as the public defender in this case.

. . . .

And you understand, [Mr. Browning], that I'm presuming that Ms. Dupuis is actually going to appear on your behalf at this point in time.

BROWNING:  So am I.  I'm presuming that she is also.  We have the money coming to –

THE COURT:  Because the other thing is, you have to understand that essentially what you are doing is you will be in a position where you will be representing yourself.  And that means that all of the same rules in court apply to you just as they do the lawyers.

BROWNING:  Yeah.

5

THE COURT:  You understand that if you make any mistakes, that I can't give you any assistance and I won't give you any special benefits or privileges.

BROWNING:  I understand.

THE COURT:  You understand that the government is represented by an attorney, someone who has spent a lot of time in handling criminal cases.  And you understand that you will be up against determining all of the decisions that would have to be made in selection of a jury, in providing an opening statement, in what's admissible evidence.  You understand that?

BROWNING:  I understand.

THE COURT:  You understand that you would then have to conduct your own direct and your own cross-examination of witnesses.

BROWNING:  I understand.

THE COURT:  In addition . . . you understand that by removing Mr. Bennett, then the Court is removing the obligation to have a public defender involved in this case.

BROWNING:  I understand.

THE COURT:  All right.  Then I have removed Mr. Bennett.  You are now for the Court's purposes representing yourself until and unless such time happens as Ms. Dupuis enters some appearance . . . .

. . . .

BROWNING:  I want to thank Mr. Bennett.  I just – he did seem to be pretty professional.  There's just certain things that would have eased my mind and made me feel better about my case if I would have gotten them sooner.  I just –

THE COURT:  The Court's difficulty is, at this point you're in three attorneys deep.  . . .  The first one the Court removed.  Mr. Hinchey and Mr. Bennett the Court did not remove until request to do so by you.

BROWNING:  Mr. Hinchey lied to me.

6

THE COURT: My experience with both counsel is they're very professional and very experienced, and I am concerned about you representing yourself in this matter because of the dangers and disadvantages that come with that. But you have that right and I am going to afford that to you.

¶7 Although Browning intended to retain Dupuis as counsel, his plans failed when his daughter allegedly absconded with the retainer fee. Browning then told the court that he wanted to hire his own attorney, but that he lacked sufficient funds. Browning further stated that he was "in no shape to act as [his] own attorney." The court responded that it had been clear with Browning that when Bennett was dismissed, Browning was either proceeding with private counsel or appearing *pro se* and that under the circumstances, the court viewed Browning as representing himself.

¶8 During subsequent hearings, Browning asserted that in representing himself, he was receiving ineffective assistance of counsel because he was "a fool" as an attorney. The court informed Browning in no uncertain terms that it would not assign another defender to represent Browning because it had already appointed three qualified lawyers, none of whom satisfied Browning, and that Browning had "fired" the last attorney when the court had a jury sitting for trial. "I can't do any better than that," the court told Browning, "and I'm not going to." Browning explained to the court that in continuing *pro se*, he would "be prejudiced because I don't know what I'm doing." When asked by the court what the likelihood was that any attorney would satisfy him, Browning responded that all he had wanted was an attorney that would obtain certain State dispatch logs relating to his arrest. At this point, the court, in part because of Browning's status as

7

a *pro se* litigant, ordered the State to provide the discovery that Browning requested. The court then reiterated to Browning that it would not appoint further counsel because it could not provide Browning an attorney to his satisfaction. The court noted, "I'm hopeful that you can provide for yourself."

¶9 Browning eventually pled guilty pursuant to a plea agreement that was significantly more onerous than a previous offer from the State. During the change of plea hearing, Browning asserted that while he did not want to sign the plea agreement, he felt there was no other choice, as he was "stuck," unable to pay for an attorney. Browning further stated that in complaining of his representation, he "never intended to mess with the Court," he simply wanted evidence that his lawyers had failed to obtain. The court accepted Browning's guilty plea and sentenced him accordingly.

¶10 Post-sentencing, the District Court appointed the Appellate Defender Office to review Browning's case. The office, in conjunction with the University of Montana Criminal Defense Clinic, filed a motion to withdraw Browning's guilty plea, arguing that Browning's plea was not a voluntary and intelligent choice, but rather, a helpless decision resulting from lack of counsel. The District Court denied Browning's motion, stating that it had "made every effort to afford the Defendant counsel," but that no attorney could represent Browning "in the way that he wished."

## STANDARD OF REVIEW

¶11 When a defendant appeals a district court's denial of a motion to withdraw a guilty plea, we review the trial court's findings of fact to determine if they are clearly

8

erroneous, and conclusions of law to determine if they are correct. When the voluntariness of the plea is at issue, we review that ultimate mixed question of law and fact *de novo* to determine if the trial court correctly held that the defendant pled voluntarily. *State v. Leitheiser*, 2006 MT 70, ¶ 12, 331 Mont. 464, ¶ 12, 133 P.3d 185, ¶ 12.

## DISCUSSION

¶12 **Did the District Court deny Browning assistance of counsel and therefore err when it denied Browning's motion to withdraw his guilty plea?**

¶13 Browning argues that the District Court should have granted the motion to withdraw his guilty plea pursuant to § 46-16-105(2), MCA, which allows a defendant to withdraw a guilty plea for "good cause shown." Browning argues that he has shown good cause because his plea was entered without the assistance of counsel.

¶14 "The right to assistance of counsel is embodied in the Sixth Amendment of the United States Constitution and Article II, Section 24 of the Montana Constitution." *State v. Langford* (1994), 267 Mont. 95, 99, 882 P.2d 490, 492. "Indigent defendants are entitled to legal representation by court-appointed counsel at public expense." *State v. Mann*, 2006 MT 33, ¶ 12, 331 Mont. 137, ¶ 12, 130 P.3d 164, ¶ 12. Although an accused has a constitutional right to appear *pro se*, such action results in the loss of many benefits associated with the right to counsel. Consequently, this Court indulges in every reasonable presumption against waiver of the right to counsel. *State v. Swan*, 2000 MT 246, ¶¶ 16-17, 301 Mont. 439, ¶¶ 16-17, 10 P.3d 102, ¶¶ 16-17.

9

¶15 "Since *Gideon v. Wainwright* (1963), 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799, it has been clear that a guilty plea to a felony charge entered without counsel and without a waiver of counsel is invalid." *Brady v. U.S.* (1970), 397 U.S. 742, n.6, 90 S.Ct. 1463, n.6, 25 L.Ed.2d 747, n.6. This Court will uphold a waiver of counsel so long as the defendant made the decision knowingly, voluntarily and intelligently. Section 46-8-102, MCA. In *Langford*, 267 Mont. at 99, 882 P.2d at 492 (citing *United States v. Robinson* (9th Cir. 1990), 913 F.2d 712, 714), we adopted the Ninth Circuit's requirement that "the request to represent oneself must [also] be unequivocal." This requirement serves an institutional purpose in that a defendant who vacillates at trial between wishing to be represented by counsel and wishing to represent himself could place the trial court in a difficult position:

> If the court appoints counsel, the defendant could, on appeal, rely on his intermittent requests for self-representation in arguing that he had been denied the right to represent himself; if the court permits self-representation the defendant could claim he had been denied the right to counsel. The requirement of unequivocality resolves this dilemma by forcing the defendant to make an explicit choice. If he equivocates, he is presumed to have requested the assistance of counsel.

*Langford*, 267 Mont. at 100, 882 P.2d at 493 (citation omitted).

¶16 In *Langford*, the defendant argued that he had been denied the right to represent himself when the court refused to remove court-appointed counsel after he stated during a pre-trial hearing that he waived his right to counsel. "Standing alone," we noted, "Langford's request appears to be unequivocal." Upon reviewing the record as a whole, however, we determined that "the request was equivocal" given that Langford filed a

motion both requesting replacement counsel and stating that he did not feel that he could "remotely represent himself." *Langford*, 267 Mont. at 101, 882 P.2d at 493. "Taken as a whole," we concluded, "the record clearly reflects the fact that Langford's request to represent himself was equivocal" and therefore the trial court did not violate Langford's right to self-representation. *Langford*, 267 Mont. at 102, 882 P.2d at 494.

¶17    We reached a similar conclusion in *Swan*, where the defendant stated, "Yes, I do," when asked by the court if he wanted to proceed *pro se*, but then filed a motion suggesting that the court assign a new attorney as co-counsel to assist him with advice. *Swan*, ¶ 20. We determined that what Swan really wanted was to have different counsel appointed and to be allowed to use the law library. *Swan*, ¶ 20. Recognizing that Swan had changed his mind regarding representation by an attorney, we held that "[t]he record as a whole reveals that Swan's request for self-representation was anything but unequivocal." *Swan*, ¶ 25.

¶18    Turning to the case at hand, the State argues that whether Browning asked to proceed *pro se* is "irrelevant" because the court advised Browning of the dangers and disadvantages of self-representation, and made clear that in dismissing Bennett, Browning was on his own if private counsel fell through. Relying on *State v. Craig*, (1995), 274 Mont. 140, 906 P.2d 683, the State contends that Browning cannot "halt the administration of justice" by insisting on a new attorney, while simultaneously refusing to waive his right to counsel.

¶19 In *Craig*, we held that the District Court did not deny the defendant his constitutional right to the assistance of counsel when it denied his request for a substitution of court-appointed counsel. After conducting a hearing to determine whether counsel was ineffective, the court made the following statement:

> As with any other defendant, you are entitled to hire any attorney you wish. . . . You do have the right in [this] circumstance for a court-appointed counsel, but you do not have the right to choose your own attorney. So I'm just telling you now that you also have the right to represent yourself for your trial date.
>
> [Your court-appointed attorney] is going to stay on your case. I'm going to deny your motion to replace him with any other public defender. It's too late, among other things. I don't think there's been any ineffectiveness on his part in preparing this case for trial. Nevertheless, he'll be here in court the morning of the trial, and if you don't want to use him, that's fine. You go ahead and represent yourself or bring another attorney. . . . [Your court-appointed attorney] is going to be here [at trial] as scheduled, and you're going to be here as scheduled. If you have a defense, we'd like to hear it from you that day.

*Craig*, 274 Mont. at 144-45, 906 P.2d at 686.

¶20 Apparently unable to afford private counsel, Craig proceeded to trial with his court-appointed attorney, all the while refusing to present a defense or cooperate with counsel. We reasoned that Craig could not, on appeal, assert denial of his right to counsel when he had refused to cooperate with his competent court-appointed attorney. *Craig*, 274 Mont. at 152-53, 906 P.2d at 691.

¶21 Importantly, in *Craig*, we declined to adopt the State's position that Craig's rejection of court-appointed counsel constituted an unequivocal request to proceed *pro se* and a valid waiver of his right to counsel. *Craig*, 274 Mont. at 151, 906 P.2d at 690. We

12

determined that Craig did not seek permission to appear *pro se*, as he consistently and repeatedly reiterated that he was unqualified to represent himself. We thus concluded that the court appropriately retained Craig's court-appointed attorney given its determination that counsel was effective. *Craig*, 274 Mont. at 152, 906 P.2d at 690.

¶22 In this case, when the District Court inquired whether Browning intended "to proceed with Ms. Dupuis, to represent [himself] or to continue with Mr. Bennett as [his] attorney," Browning stated, "I want Ms. Dupuis." While Browning affirmed that he understood that in terminating Bennett, he could be in a position of self-representation, he also indicated throughout the proceedings that he did not want to proceed *pro se* and was completely incompetent to serve as his own lawyer. The record does not support a conclusion that Browning unequivocally requested to proceed *pro se*. Under the *Langford* test, a defendant cannot be deemed *pro se* by default.

¶23 At first blush, it may appear that the district courts in *Craig* and Browning's case provided the defendants with a similar choice in that Browning, like Craig, was told he could proceed with court-appointed counsel or represent himself. The key difference, however—and the one this case turns on—is that the court in *Craig* declined to terminate Craig's public defender given that Craig had not made an unequivocal request to proceed *pro se*, whereas the court in Browning's case *did* terminate court-appointed counsel, even though there were no assurances that Browning had secured private representation and even though Browning had not made an unequivocal request to proceed *pro se*. Given

13

these circumstances, we conclude that the District Court denied Browning the assistance of counsel.

¶24     We hold that the District Court erred in denying Browning's motion to withdraw his guilty plea. Reversed and remanded for further proceedings consistent with this opinion.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ KARLA M. GRAY
/S/ PATRICIA COTTER
/S/ BRIAN MORRIS

Justice Jim Rice specially concurring.

¶25     The Court creates an unnecessary and costly rule that accommodates defendants engaged in shenanigans with the judicial system.

¶26     In *Craig*, this Court stated the following:

> In refusing to cooperate with his appointed counsel and, at the same time insisting that he was not asking to proceed *pro se*, Craig was attempting to force the appointment of new counsel. This Court cannot countenance such dilatory and manipulative tactics at the expense of the efficient administration of justice.

*Craig*, 274 Mont. at 153, 906 P.2d at 691. Faced with a defendant who was clearly attempting to unfairly manipulate the system to his advantage, the district court in *Craig* saw a viable remedy: keep appointed counsel on standby. While we recognized the

14

prudence of that action by the district court, we did not make it a rule that in similar situations district courts *must* do likewise. We do so today.

¶27 The tension in our precedent leads to the rule announced today, but it need not have done so. In *Craig*, we stated that "at some point a criminal defendant can be deemed to have waived to a certain extent his constitutional right to effective assistance by virtue of his unreasonable refusal to communicate with his attorney," *Craig*, 274 Mont. at 152, 906 P.2d at 690 (quoting *Thomas v. Wainwright* (11th Cir. 1985), 767 F.2d 738, 743), and that a "persistent unreasonable demand for dismissal of counsel [is] the functional equivalent of a knowing and voluntary waiver of counsel." *Craig*, 274 Mont. at 152, 906 P.2d at 690 (quoting *Thomas*, 767 F.2d at 743) (brackets in original). However, we also stated:

> We decline to adopt the State's position that Craig's rejection of [appointed counsel's] representation constituted an unequivocal request to proceed *pro se* and a valid waiver of his right to counsel. Craig's situation does not meet the unequivocal request standard established by *Langford*, 267 Mont. 95, 882 P.2d 490.

*Craig*, 274 Mont. at 151, 906 P.2d at 690. Thus, on the one hand, according to the rule in *Langford*, a defendant must make an unequivocal request to waive his right to counsel and to proceed *pro se*. On the other hand, according to *Craig*, a defendant's obfuscatory actions can at some point effectively create a waiver of the right to counsel—without an unequivocal request. In the latter situation, I would leave it to the district court's discretion in each individual case how best to address the defendant's actions.

15

¶28 I concur with the Court's decision today because I cannot say with confidence that Browning reached the point at which he could be deemed to have waived his right to counsel, because he was focused primarily on hiring private counsel. However, I do not agree that we should require, as a rule, appointed counsel to remain on standby absent an unequivocal waiver.

/S/ JIM RICE