DA 11-0062

IN THE SUPREME COURT OF THE STATE OF MONTANA

2011 MT 277

STATE OF MONTANA,

        Plaintiff and Appellee,

  v.

BRENT ARTHUR WILSON,

        Defendant and Appellant.

APPEAL FROM:    District Court of the Twentieth Judicial District,
In and For the County of Lake, Cause No. DC-10-23
Honorable Deborah Kim Christopher, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

        Joseph P. Howard, Attorney at Law, Great Falls, Montana

        For Appellee:

        Steve Bullock, Montana Attorney General, Tammy K Plubell, Assistant
Attorney General, Helena, Montana

        Mitch Young, Lake County Attorney, Polson, Montana

Submitted on Briefs:  September 22, 2011

Decided:  November 8, 2011

Filed:

_____
Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1     Brent Arthur Wilson (Wilson) appeals from the Judgment and Commitment of the Twentieth Judicial District Court, Lake County, Montana, finding him guilty on four miscellaneous felony and misdemeanor counts, and sentencing him accordingly.  Wilson alleges he did not voluntarily, knowingly, and intelligently waive his right to counsel and that the District Court erred when it did not require standby counsel to assist him.  Wilson also argues the District Court abused its discretion by allowing the State of Montana to introduce journals allegedly authored by Wilson into evidence, as the State did not properly authenticate or identify the journals.  Finally, Wilson alleges that the District Court illegally augmented his sentence because he refused to confess his crimes, and that it also failed to adequately consider alternative sentencing.

¶2     We affirm.

## ISSUE

¶3     Wilson raises three issues on appeal.  A restatement of the issues is:

¶4     1.  Did the District Court err in determining substantial credible evidence existed that Wilson knowingly, intelligently, and competently waived his right to counsel, and granting his request to represent himself?

¶5     2.  Should this Court conduct plain error review of the State's use of journals allegedly belonging to Wilson?

¶6     3.  Was the sentence the District Court imposed upon Wilson legal?

## FACTUAL AND PROCEDURAL BACKGROUND

¶7 Wilson was involved in a fraudulent contract scheme to illegally take possession of real property in Lake County, Montana. At issue was a house located at 2948 Meadow Road[1] in Polson (Property), previously owned by an individual who had defaulted on her loans. First American Title Insurance Company acquired the Property, and on July 16, 2009, sold it to Federal Home Loan Mortgage Corporation at an auction for $385,131.42. On or around August 7, 2009, Wilson recorded a number of fraudulent documents relative to the Property at the Lake County Clerk and Recorder's Office.

¶8 Around August 14, 2009, a Lake County real estate agent reported that someone had tampered with one of his property listings. At the Property, the locks had been changed, a notice stating the property was foreclosed upon on August 7, 2009, was posted on the inside of the house, and the real estate agent's For Sale signs were taken down. The cost to replace the locks and signs totaled between $500 and $700.

¶9 The State filed an Information listing seven counts against Wilson, and a warrant was issued for his arrest. Three counts were later dropped, and an amended Information was filed.

¶10 On February 18, 2010, Wilson was arraigned in District Court. He was asked if he wished to have an attorney represent him. He declined, stating he wished to represent himself. The District Court informed him of his rights and the dangers and disadvantages of representing himself. After again being advised of his rights and the dangers and disadvantages of self-representation, Wilson pled not guilty to all counts. The District

---

[1] The parties refer to the Property as both Meadow Road and Meadow Lane. We will refer to the Property as Meadow Road in this Opinion.

Court requested counsel be available as standby counsel if Wilson decided to accept legal advice, though Wilson confirmed he did not want representation. At the State's request, the District Court ordered a mental health evaluation of Wilson to make sure he was fit to represent himself and adequately waived his rights.

¶11 The mental health evaluation concluded that Wilson was generally fit to proceed with his criminal charges. Wilson was found to be bright and legally astute and to not suffer from a mental disease or defect. Though diagnosed with a mixed personality disorder with antisocial and narcissistic traits, Wilson was not seriously developmentally disabled and did not suffer from a mental disorder requiring commitment to the Montana State Hospital. While the report suggested Wilson's plan was to continue to refuse legal counsel, it concluded that such behavior was a voluntary choice on his part and was not indicative of the presence of a mental disease, disorder, or defect. Likewise, the fact that he chose not to reveal his unconventional defense strategy to the mental health examiner was not indicative of an underlying mental disease or defect. Based on these findings, the District Court determined Wilson was fit to proceed and represent himself.

¶12 Wilson made numerous subsequent appearances before the District Court, appearing as a self-represented litigant. At each appearance, the District Court engaged in protracted discussions with Wilson, reminding him of the dangers and disadvantages of self-representation, and imploring him to accept counsel or at least confer with standby counsel. Wilson consistently referred to himself as a "beneficiary" and Judge Christopher as his "trustee." The District Court explained that these notions were mistaken. Wilson continued to decline the assistance of counsel. At a status conference,

Wilson stated he wished to waive his right to a jury trial and waive his constitutional rights, though the District Court declined to grant his waiver as he was unwilling to withdraw his not guilty plea and plead guilty. At one point Wilson wished to "settle and close" the case, which the State understood as a motion to dismiss. The District Court denied the motion.

¶13 Following a jury trial during which he represented himself, Wilson was found guilty of four counts and was sentenced on December 3, 2010, as follows: Count I—Attempt (Theft), felony—six years in the Montana State Prison with three years suspended; Count II—Deceptive Practices, felony—four years in the Montana State Prison with two years suspended; Count III—Tampering with Public Records or Information, felony—ten years in the Montana State Prison with five years suspended; and Count IV—Criminal Mischief, misdemeanor—six months in the Lake County jail. All counts were to run consecutively, with 358 days of credit given for time served. The appointed standby counsel immediately moved for a new trial, which the District Court denied. The District Court indicated it was not opposed to a conditional release if Wilson "ever comes to accept responsibility, gains an appreciation for the law, recognizes society and other people's property rights and develops a willingness to participate in the country in which he has chosen to live."

¶14 Wilson appeals.

**STANDARD OF REVIEW**

¶15 We will not disturb a district court's ruling that a defendant has made a voluntary, knowing, and intelligent waiver of the right to counsel if substantial credible evidence

exists to support the decision, and if "the trial court satisfies itself that the defendant is 'aware of the dangers and disadvantages of self-representation . . . .' " *State v. Colt*, 255 Mont. 399, 407, 843 P.2d 747, 752 (1992); *State v. Dawson*, 2006 MT 69, ¶ 14, 331 Mont. 444, 133 P.3d 236 (citing *Faretta v. California*, 422 U.S. 806, 835, 95 S. Ct. 2525, 2541 (1975)). The district court is not required to adhere to a particular test or specific set of requirements in determining if the defendant voluntarily, knowingly, and intelligently waives the right to counsel, and the defendant's technical legal knowledge is not relevant to the assessment. *Dawson*, ¶ 14; *Faretta*, 422 U.S. at 836, 95 S. Ct. at 2541. We will look at "the particular facts and circumstances surrounding th[e] case, including the background, experience, and conduct of the accused" to determine if a waiver was knowing and intelligent. *State v. Plouffe*, 198 Mont. 379, 385, 646 P.2d 533, 536 (1982) (citing *Edwards v. Arizona*, 451 U.S. 477, 482, 101 S. Ct. 1880, 1884 (1981)).

¶16 This Court will "discretionarily review 'claimed errors that implicate a criminal defendant's fundamental constitutional rights,' even if a timely objection was not made in the trial court . . . ." *State v. West*, 2008 MT 338 ¶ 23, 346 Mont. 244, 194 P.3d 683 (citing *State v. Finley*, 276 Mont. 126, 137, 915 P.2d 208, 215 (1996), *overruled in part on other grounds*, *State v. Gallagher*, 2001 MT 39, ¶ 21, 304 Mont. 215, 19 P.3d 817). When a claimed error implicates a defendant's fundamental rights, we may review the claimed error where failing to do so "may result in a manifest miscarriage of justice, may leave unsettled the question of the fundamental fairness of the trial or proceedings, or may compromise the integrity of the judicial process." *State v. Taylor*, 2010 MT 94, ¶ 12, 356 Mont. 167, 231 P.3d 79; *accord State v. Parrish*, 2010 MT 212, ¶ 15, 357

Mont. 477, 241 P.3d 1041. We invoke plain error review sparingly, on a case-by-case basis, according to narrow circumstances, and by considering the totality of the case's circumstances. *State v. Lindberg*, 2008 MT 389, ¶ 34, 347 Mont. 76, 196 P.3d 1252. "[A] mere assertion that constitutional rights are implicated or that failure to review the claimed error may result in a manifest miscarriage of justice is insufficient to implicate the plain error doctrine." *State v. Gunderson*, 2010 MT 166, ¶ 100, 357 Mont. 142, 237 P.3d 74.

¶17 We review a district court's evidentiary rulings to determine whether the court abused its discretion by "act[ing] arbitrarily without conscientious judgment or [by] exceed[ing] the bounds of reason." *Seltzer v. Morton*, 2007 MT 62, ¶ 65, 336 Mont. 225, 154 P.3d 561 (citing *Lopez v. Josephson*, 2001 MT 133, ¶ 14, 305 Mont. 446, 30 P.3d 326). If we determine the district court did abuse its discretion, we then determine whether a reversible error occurred by which either "a substantial right of the appellant is effected [sic]" or "the evidence in question was of such character as to have affected the outcome of the trial." *Seltzer*, ¶ 65.

¶18 "We review criminal sentences that include at least one year of actual incarceration for legality only," which is generally a review for correctness. *State v. Ariegwe*, 2007 MT 204, ¶¶ 174-175, 338 Mont. 442, 167 P.3d 815. As a question of law, we review de novo whether the sentencing court had statutory authority to impose the sentence, the sentence falls within the statutory parameters, and the court adhered to the statutory mandates. *Ariegwe*, ¶¶ 174-175. Alternatives to criminal sentencing are a matter of statute which we review to determine "whether the district court correctly

applied the applicable statutes." *State v. Brendal*, 2009 MT 236, ¶ 11, 351 Mont. 395, 213 P.3d 448 (citing *State v. Shults*, 2006 MT 100, ¶ 34, 332 Mont. 130, 136 P.3d 507).

## DISCUSSION

¶19 *Issue One: Did the District Court err in determining substantial credible evidence existed that Wilson knowingly, intelligently, and competently waived his right to counsel, and granting his request to represent himself?*

¶20 Wilson argues he was not competent to waive his right to counsel, and that the requisite substantial evidence necessary to support the determination that he competently waived his right to counsel was lacking. Moreover, Wilson argues that the District Court erred when it failed to require standby counsel to assist or take over Wilson's defense when it became apparent he was abusing his Sixth Amendment right to represent himself.

¶21 The right to the assistance of counsel is a fundamental right, guaranteed by the Sixth Amendment of the United States Constitution and Article II, Section 24 of the Montana Constitution. *State v. Allen*, 2009 MT 124, ¶ 12, 350 Mont. 204, 206 P.3d 951. A defendant also has a constitutional right to appear pro se, though "the district court must ensure that a defendant is competent to abandon his or her right to counsel and proceed pro se" because of the potential loss of the benefit of counsel. *State v. Hartsoe*, 2011 MT 188, ¶ 38, 361 Mont. 305, 258 P.3d 428. Under § 46-8-102, MCA, "[a] defendant may waive the right to counsel when the court ascertains that the waiver is made knowingly, voluntarily, and intelligently."

¶22 The District Court warned Wilson numerous times and at length of the dangers and disadvantages of self-representation. Each time, Wilson declined the assistance of counsel and insisted on acting in his own defense. The record demonstrates that Wilson's

8

repeated requests to represent himself were consistent and unambiguous, thus meeting the requirement set forth in *State v. Langford*, 267 Mont. 95, 99, 882 P.2d 490, 492 (1994), that a request to represent oneself must be unequivocal.

¶23 Though we acknowledge that Wilson's demeanor with the District Court was unconventional and at times somewhat bizarre, the fact remains that he was found by a mental health evaluator to be mentally capable of making decisions and fit to proceed and act on his own behalf. Mindful of Wilson's right to represent himself if capable of doing so, the District Court was placed in the difficult position of balancing Wilson's constitutional right to counsel with his right to represent himself. *See State v. Browning*, 2006 MT 190, ¶ 15, 333 Mont. 132, 142 P.3d 757. We conclude the District Court did everything in its power to persuade Wilson to accept counsel, without unduly pressuring him to do so in possible violation of his right to represent himself.

¶24 Given the record documenting the District Court's exhaustive discussions with Wilson and attempts to convince him to accept the assistance of counsel, and given the findings of Wilson's mental health evaluation indicating that he was fit to proceed and act in his own defense, we conclude that substantial credible evidence supports the District Court's conclusion that Wilson unequivocally chose to proceed without counsel, and that his decision to do so was knowing, voluntary, and intelligent. We reject Wilson's suggestion that we should via hindsight determine that because he did not present a competent defense at trial, he obviously abused his right to represent himself and the District Court should have required standby counsel to take over his defense against his wishes. As the State correctly notes, one's competence to decide to represent himself is

9

not dependent upon his having the skill and experience of a lawyer. *Halley v. State*, 2008 MT 193, ¶ 20, 344 Mont. 37, 186 P.3d 859.

¶25 For the foregoing reasons, we will not disturb the District Court's conclusion that Wilson knowingly, voluntarily, and intelligently waived his right to counsel.

¶26 *Issue Two: Should this Court conduct plain error review of the State's use of journals allegedly belonging to Wilson?*

¶27 On appeal, Wilson argues for the first time that the State did not establish a proper foundation for or properly authenticate journals allegedly authored by him that were admitted into evidence, as required by M. R. Evid. 901. Wilson seeks plain error review of the use of journals as evidence.

¶28 This Court generally does not review issues raised for the first time on appeal, and we will not reverse a decision for error unless the error was prejudicial. *State v. Norquay*, 2011 MT 34, ¶ 46, 359 Mont. 257, 248 P.3d 817; § 46-20-701(1), MCA. We employ plain error review "sparingly, on a case-by-case basis." *Lindberg*, ¶ 34. The plain error doctrine's two-part test requires the defendant to show that: (1) "the alleged error implicate[s] a fundamental right"; and (2) "failing to review the claimed error may result in a manifest miscarriage of justice, may leave unsettled the question of the fundamental fairness of the trial or proceedings, or may compromise the integrity of the judicial process." *Gunderson*, ¶¶ 99-100 (citing *Taylor*, ¶ 12).

¶29 Wilson asserts that the journals were the only evidence presented by the State showing certain crimes, and that the introduction of opinion testimony regarding the handwriting samples was harmful error and the "linchpin" to the State's case. He argues

10

that the journal entries were prejudicial in nature, upsetting his right to a fair trial. However, Wilson does not provide us with anything more than these assertions. As already noted, mere assertions are "insufficient to implicate the plain error doctrine." *Gunderson*, ¶ 100. As in *Gunderson*, we find that Wilson failed to carry his burden to satisfy both prongs of the two-part test and show prejudicial error. Likewise, "we are not 'firmly convinced' that failing to address the claimed error would result in a manifest miscarriage of justice, leave unsettled the question of the fundamental fairness of the trial or proceedings, or compromise the integrity of the judicial process." *Gunderson*, ¶ 101. We therefore decline to conduct plain error review of the admission of these journals into evidence.

¶30 *Issue Three: Was the sentence the District Court imposed upon Wilson legal?*

¶31 Wilson argues that the District Court augmented his sentence because he refused to confess his crimes, and that the District Court did not "first consider alternatives to imprisonment" or "take into account" certain factors when sentencing him, as required by § 46-18-225, MCA. He argues the District Court inadequately considered the circumstances of his situation and his susceptibility to alternative sentencing, and failed to provide reasons as to why alternatives to imprisonment were not chosen. Ultimately, Wilson argues that if the District Court had taken the specific criteria of § 46-18-225(2), MCA, into consideration, he would have received a more lenient sentence.

¶32 In reviewing a criminal sentence for legality, we first look to whether the District Court had the statutory authority to impose the sentence. It is clear that the sentences imposed by the District Court fell well within its statutory authority. The six years in

11

prison issued for Count I—Attempt (Theft)—is within the ten years allowed under §§ 45-4-103(3) and 45-6-301(8)(b)(i), MCA. The four years issued for Count II—Deceptive Practices—is within the ten years allowed under § 45-6-317(2), MCA. The ten years issued for Count III—Tampering with Public Records or Information—is within the ten years allowed under § 45-7-208(2), MCA. Finally, the six months issued for Count IV—Criminal Mischief—is within the six months allowed under § 45-6-101(3), MCA. The sentences were legal.

¶33 We next determine if the District Court adhered to and correctly applied the statutory mandates. Wilson is correct in stating that the sentencing judge "*shall* first consider alternatives to imprisonment of the offender in a state prison," and that the judge "*shall* examine the sentencing criteria contained in subsection (2)" in doing so. Section 46-18-225(1), MCA (emphasis added).

¶34 Section 46-18-225(2), MCA, provides as follows:

> Prior to sentencing a nonviolent felony offender to whom 46-18-219 does not apply to a term of imprisonment in a state prison, the sentencing judge shall take into account whether:
> (a) the interests of justice and the needs of public safety truly require the level of security provided by imprisonment of the offender in a state prison;
> (b) the needs of the offender can be better served in the community or in a facility or program other than a state prison;
> (c) there are substantial grounds tending to excuse or justify the offense, though failing to establish a defense;
> (d) the offender acted under strong provocation;
> (e) the offender has made restitution or will make restitution to the victim of the offender's criminal conduct;
> (f) the offender has no prior history of conviction for a criminal act or, if the offender has a prior history of conviction for a criminal act, the offender has led a law-abiding life for a substantial period of time before the commission of the present crime;

12

(g) the offender's criminal conduct was the result of circumstances that are unlikely to recur;

(h) the character and attitude of the offender indicate that the offender is likely to commit another crime;

(i) the offender is likely to respond quickly to correctional or rehabilitative treatment; and

(j) imprisonment of the offender would create an excessive hardship on the offender or the offender's family.

¶35 It is clear the District Court took into account the foregoing sentencing criteria. A specifically noted reason for the sentence was "so the Court can protect other property owners from the Defendant and what happened in this particular case." Not only was the public safety factor of the criteria met, but the District Court also addressed Wilson's prior criminal history, the likelihood of a reoccurrence, and the likelihood of Wilson's response to correctional or rehabilitative treatment. Though the District Court did not explicitly address each of the criteria in § 46-18-225(2), MCA, we find no reason to conclude that doing so would have resulted in any different sentence. *See State v. Weisweaver*, 2010 MT 198, ¶¶ 14, 19, 357 Mont. 384, 239 P.3d 952.

¶36 Finally, we conclude that the District Court did not augment Wilson's sentence because he refused to confess to his crime. We have said that "a defendant has a constitutional right against self-incrimination, 'which prohibit[s] augmenting a defendant's sentence because he refuses to confess to a crime or invokes his privilege against self-incrimination.' " *State v. Cesnik*, 2005 MT 257, ¶ 23, 329 Mont. 63, 122 P.3d 456 (citing *State v. Imlay*, 249 Mont. 82, 91, 813 P.2d 979, 985 (1991)). Though the District Court did discuss the possibility of changes to Wilson's sentence if he owned up to his actions, the record does not suggest the District Court punished Wilson for refusing

13

to confess to his crimes. In fact, the District Court's Judgment and Commitment clearly spells out its valid reasons for the sentence, and punishing Wilson for refusing to confess is not among them. As noted above, the sentence imposed by the District Court was both legal and fully supported by the statutory considerations cited by the court. "The sentence imposed by the [D]istrict [C]ourt is presumed correct." Section 46-18-904(3), MCA. We will not disturb it.

## CONCLUSION

¶37    The District Court judgment is affirmed.

/S/ PATRICIA COTTER

We concur:

/S/ JAMES C. NELSON
/S/ BETH BAKER
/S/ MICHAEL E WHEAT
/S/ BRIAN MORRIS

14