
DA 12-0694

IN THE SUPREME COURT OF THE STATE OF MONTANA

2013 MT 260N

IN THE MATTER OF

M.F.W.,

      Respondent and Appellant.

APPEAL FROM:    District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DI-08-102
Honorable Ed McLean, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Wade Zolynski, Chief Appellate Defender; Koan Mercer, Assistant
Appellate Defender; Helena, Montana

      For Appellee:

            Timothy C. Fox, Montana Attorney General; Pamela P. Collins, Assistant
Attorney General; Helena, Montana

            Fred Van Valkenburg, Missoula County Attorney; Cathleen Sohlberg,
Deputy County Attorney; Missoula, Montana

Submitted on Briefs: August 21, 2013

Decided: September 10, 2013

Filed:

_____
                        Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(d), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 M.F.W. appeals from an Involuntary Mental Health Commitment Order ("Order") entered in the Fourth Judicial District Court, Missoula County, which committed him to community-based mental health treatment. We affirm.

¶3 M.F.W. is a 54-year-old male with a long history of mental illness. He has been diagnosed with schizophrenia, paranoid type, and has a history of mental health commitments. M.F.W. was criminally committed to involuntary mental health treatment after being charged with robbery alleged to have occurred on July 1, 1998. M.F.W. was later found to be suffering from a mental disease or defect that caused him to present a substantial risk of physical injury to others. He was committed to the Department of Public Health and Human Services and placed at the Montana State Hospital (MSH) from 1998 until his conditional release in 2003. Upon conditional release into the community, M.F.W. was ordered to comply with aftercare treatment and to take his medications. He remained on conditional release until 2008.

¶4 Since 2008, M.F.W. has been intermittently compliant with treatment and taking his medications. M.F.W. has had several other involuntary commitments since his conditional release and prior to these proceedings. His history indicates that when

M.F.W. is not compliant with taking his antipsychotic medications, his mental health condition deteriorates and he becomes disorganized, often experiencing paranoid delusions that cause him to be suspicious and guarded. M.F.W.'s prior civil commitment order has expired and he subsequently stopped taking his medications in the spring of 2012. M.F.W. receives injectable antipsychotics in order to insure he takes his medication. He missed his medication appointment in July 2012.

¶5 Based upon numerous complaints received from law enforcement that M.F.W. was intimidating females in the Seeley Lake area, a petition for M.F.W.'s involuntary commitment was filed on September 10, 2012. The District Court conducted a hearing on October 15, 2012, and entered its written order committing M.F.W. and requiring that M.F.W. comply with community-based treatment.

¶6 At the hearing, Missoula County Sheriff's Deputies Robert Parcell and Heath Hanson testified that since July they had received over twenty calls from residents in the Seeley Lake area with complaints that M.F.W. was demonstrating inappropriate behavior towards women in the community. There were several reports that M.F.W. was approaching females at local businesses and was handing out cards soliciting women to call him. On one occasion, M.F.W. followed an elderly woman to her home after she left church. The Valley Market, the Moose River Bar and most recently Rovero's have banned M.F.W. from their premises. Both Deputy Parcell and Deputy Hanson testified that when they approached M.F.W. to inform him he could no longer go to area businesses, M.F.W.'s behavior quickly escalated and he became agitated. M.F.W.'s thoughts centered around government conspiracies that he believed were aimed at

3

violating his rights. Residents in Seeley Lake reported feeling threatened and intimidated by M.F.W.'s behavior.

¶7 Timothy C. Myers, LCSW, testified M.F.W. refused to participate in the court-ordered evaluation prior to hearing. Myers reviewed M.F.W.'s treatment records including those from MSH and the Western Montana Mental Health Center (WMMHC). Myers testified that M.F.W. suffers from schizophrenia, paranoid type. Since his release from MSH in 2003, M.F.W. has been on court-ordered supervision for his mental health, in one form or another. M.F.W. was receiving case management services with WMMHC, including medication management and the utilization of injectable medications. It was Myers' opinion that M.F.W. would not comply with treatment absent a court order. Myers further opined that court-ordered treatment was essential to help M.F.W. achieve and maintain stability in a community setting.

¶8 Myers further testified that he reviewed a letter M.F.W. submitted to the court. It was Myers' opinion that, based on the letter and the recent reports about M.F.W.'s behaviors towards women in Seeley Lake, M.F.W. was showing signs of decompensation. Myers testified that when not taking medication, M.F.W. has decompensated to a point where he is unable to meet his basic needs, resulting in long-term hospitalization. M.F.W.'s current persecutory delusions are centered around the government and are consistent with those that he was experiencing just prior to his commission of a felony (robbery) and his forensic commitment to MSH in 2003.

¶9 The District Court found that M.F.W.'s treatment providers are concerned that his recent behavior may at some point place him or others in a dangerous situation. Myers

testified that M.F.W.'s mental illness is currently preventing him from accessing his medication. Without treatment, Myers believes M.F.W.'s symptoms of schizophrenia will continue to increase to a point that would require hospitalization. Myers testified that M.F.W.'s mental health condition is treatable with a reasonable prospect of success and he recommended that M.F.W. be court-ordered to participate in a community-based treatment program to include medication and case management services.

¶10    M.F.W. testified and denied any mental illness or the need to take medication.

¶11    The District Court concluded that the least restrictive treatment alternative necessary to protect M.F.W. and the public and to permit effective treatment was for M.F.W. to comply with community-based treatment. The District Court ordered M.F.W. to follow all recommendations of his treatment providers; take all medications as prescribed, including injectable medications if recommended; and, if necessary, M.F.W.'s treatment team would have authority to admit M.F.W. to St. Patrick Hospital or another appropriate treatment facility. The order of commitment was for a period of six months, to expire on April 15, 2013.

¶12    M.F.W. maintains that the District Court improperly violated his right to testify by interrupting M.F.W. while he was testifying and threatening M.F.W. with inpatient commitment at MSH if he did not agree to a community-based commitment. As no objection was made by M.F.W.'s trial counsel, M.F.W. contends plain error review is warranted.

¶13    This Court reviews a district court civil commitment order to determine whether the court's findings are clearly erroneous and its conclusions of law are correct. *In re*

*R.W.K.*, 2013 MT 54, ¶ 14, 369 Mont. 193, 297 P.3d 318. The Court's review is discretionary when an individual requests review of issues pursuant to the plain error doctrine regarding issues not objected to in the trial court. A mere assertion that constitutional rights are implicated, or that failure to review the claimed error may result in a manifest miscarriage of justice, is insufficient to implicate the plain error doctrine. *In re J.S.W.*, 2013 MT 34, ¶¶ 15-17, 369 Mont. 12, 303 P.3d 741; *State v. Wilson*, 2011 MT 277, ¶¶ 16, 28, 362 Mont. 416, 264 P.3d 1146.

¶14 A review of the record in the instant proceedings, in its totality, clearly establishes that M.F.W. was not denied his constitutional right to testify. Due process is flexible and calls for procedural protections based upon the particular circumstances of the case. *In re L.K.*, 2008 MT 169, ¶ 27, 343 Mont. 366, 184 P.3d 353. Whether due process of law has been denied depends upon an appraisal of the totality of facts in any given case. *State v. West*, 2008 MT 338, ¶ 32, 346 Mont. 244, 194 P.3d 683. The District Court allowed M.F.W. to testify without interruption for a significant amount of time. M.F.W. began to ramble without being prompted or questioned by his trial counsel. The District Court properly redirected the questioning and inquiry and took control of the proceeding as it is required to do.

¶15 A review of the record further indicates that, at the point the court began its discussion with M.F.W., the District Court's efforts were directed towards making the inevitable forthcoming events of community-based treatment as easy as possible for M.F.W. The District Court was very familiar with M.F.W., having presided over several prior commitment proceedings. The record establishes that, had M.F.W. not complied

with community-based treatment, the more restrictive alternative of MSH would become necessary. Far from denying M.F.W. due process, the District Court was being as fair as possible with M.F.W. in explaining to him his treatment options.

¶16 We have determined to decide this case pursuant to Section I, Paragraph 3(d) of our Internal Operating Rules, which provides for noncitable memorandum opinions. The District Court's findings of fact are supported by substantial evidence and the legal issues are controlled by settled Montana law, which the District Court correctly interpreted.

¶17 Affirmed.

/S/ LAURIE McKINNON

We Concur:

/S/ MIKE McGRATH
/S/ BETH BAKER
/S/ PATRICIA COTTER
/S/ JIM RICE