FILED

12/13/2022

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 20-0502

DA 20-0502

IN THE SUPREME COURT OF THE STATE OF MONTANA

2022 MT 242

STATE OF MONTANA,

       Plaintiff and Appellee,

  v.

NICHOLAS LEE WINZENBURG,

       Defendant and Appellant.

APPEAL FROM:    District Court of the Eleventh Judicial District,
In and For the County of Flathead, Cause No. DC-17-324(A)
Honorable Amy Eddy, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Chad Wright, Appellate Defender, Carolyn Gibadlo, Assistant Appellate
Defender, Missoula, Montana

      For Appellee:

          Austin Knudsen, Montana Attorney General, Mardell Ployhar, Helena,
Montana

          Travis R. Ahner, Flathead County Attorney, Andrew C. Clegg, Deputy
County Attorney, Kalispell, Montana

Submitted on Briefs:  October 26, 2022

Decided:  December 13, 2022

Filed:

_____
Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1     Nicholas Lee Winzenburg (Winzenburg) appeals his conviction and sentence for robbery entered in the Montana Eleventh District Court, Flathead County.  We affirm.

¶2     We restate the following issues for review:[1]

1. *Did Winzenburg knowingly and voluntarily waive his right to counsel?*

2. *Should this Court exercise plain error review to address Winzenburg's unpreserved claim that the District Court should have given a specific unanimity instruction?*

**FACTUAL AND PROCUDERAL BACKGROUND**

¶3     The following facts were elicited through testimony at trial.  On June 3, 2017, victim Solomon Franchi (Franchi) was driving to pick up his friend, Allison Boka (Boka), around midnight.  On his way, he stopped to allow Winzenburg—a stranger—to cross the street.  Winzenburg made a gesture that implied to Franchi that he needed a lighter.  Because Franchi's car window was broken, he unlocked his door to help Winzenburg.  Winzenburg opened the unlocked door and got into Franchi's car.  Franchi agreed to give Winzenburg a ride, although he testified that he thought Winzenburg was "kind of scary" and "big."  Winzenburg asked Franchi to take him to an apartment complex.  Once they arrived at the

---

[1] Winzenburg also contends the jury was not given written instructions defining robbery and its elements, Instruction Nos. 19 and 20 respectively. However, the District Court and the clerk's office have confirmed the written jury instruction packet given to the jury contained Instruction Nos. 19 and 20, and that any error occurred in transmission of the record on appeal.  We conclude the jury was instructed, both verbally and in writing, on the definition of robbery and its elements.

apartment complex, Winzenburg went to a door but returned to the car after no one answered. He told Franchi, "I guess I'm mobbing with you." Franchi perceived this comment as Winzenburg telling him that he was going to hang out with Franchi for the rest of the night. Franchi did not want to hang out with Winzenburg but did not tell Winzenburg to leave because he did not want to be "impolite." Franchi proceeded to pick up Boka with Winzenburg in the car.

¶4 Boka was outside with a friend when Franchi and Winzenburg arrived at her house. Winzenburg exited the car and stood "very creepily behind" Franchi and Boka. Boka got into the car with Franchi and Winzenburg. She sat in the back seat. While they were driving, Winzenburg pulled out a can, which Franchi and Boka presumed to be an alcoholic beverage. Winzenburg told the two friends that he was recently released from prison. Franchi and Boka were intimidated and scared by this statement, so Franchi drove to the nearest grocery store parking lot to try to get Winzenburg out of the car and make him leave them alone.

¶5 After parking at the grocery store, Franchi told Winzenburg that he and Boka wanted to be left alone. Winzenburg responded, "You know what's happening, I'm robbing you." Franchi replied by handing Winzenburg money and asking again for him to leave them alone. Next, Winzenburg tried to take the keys from the car's ignition. However, Franchi was able to get the keys by grabbing a lanyard that was attached to them. Winzenburg ordered Franchi to leave his keys and phone and get out of the car.

3

Winzenburg then threatened that he would drag Franchi out of the car if Franchi refused to comply, but Franchi took his keys and he and Boka ran from the car and called 911.

¶6 Officer Brian Struble (Struble) arrived at the grocery store after Franchi and Boka frantically flagged him down. Struble saw Winzenburg get out of the driver's seat of Franchi's car. Winzenburg walked over to Struble, and Struble arrested him. Winzenburg lied to Struble that he had known Franchi for ten years, and that Franchi and Boka walked away from the car after they had an argument. Winzenburg also gave Struble a false name. Struble talked with Franchi and Boka after Winzenburg's arrest and noticed that Franchi was visibly trembling. Franchi looked through his car and told Struble items were missing. Struble found the missing items on Winzenburg. Later, Franchi and Boka went to the police station and gave statements. A surveillance video obtained from law enforcement showed Franchi and Boka running from the car and was consistent with their statements to police.

¶7 At the end of June, Winzenburg appeared for a charge of robbery. The Justice of the Peace set bail at $50,000, appointed a public defender, and set his arraignment. Winzenburg's first counsel represented him until Winzenburg wrote a letter to the District Court ten days after charges were filed advising he no longer needed an attorney and that he would "be handling [his] case pro se." The District Court did not respond to his letter, but Winzenburg was assigned new counsel. While he was represented, Winzenburg also filed a pro se motion to dismiss his case. The Clerk of Court rejected the motion because he was represented by counsel at the time.

4

¶8     Winzenburg's next counsel was substituted at his arraignment on July 20, 2017. Winzenburg did not meet his new counsel before his arraignment. At the arraignment, the District Court was ready to hear argument for a bond reduction. However, Winzenburg's new counsel was not prepared to discuss bond reduction and so requested a continuance. During the arraignment, Winzenburg stated that he was "aware" of the maximum penalties and sentences for robbery based on his counsel's explanation to him. Winzenburg's counsel then told the District Court that Winzenburg "indicated he wishes to seek your approval to continue representing himself pro se."

¶9     The District Court asked Winzenburg why he desired to represent himself. Winzenburg replied, "Just dealing with the State as long as I have I just feel it's appropriate that I represent myself." The District Court asked Winzenburg whether he "understood the consequence of a robbery conviction," and told him that "the consequence for a robbery conviction is a term in the State prison of not less than two years or more than 40." Winzenburg responded, "Yes, ma'am." Again, the District Court asked Winzenburg, "And . . . you could potentially be facing a significant sentence if you were convicted. You understand?" Winzenburg replied, "I do." After the District Court warned him about the "inherent disadvantages of representing [him]self," the State informed Winzenburg and the District Court that it was going to file a notice designating Winzenburg a persistent felony offender (PFO).

¶10     After this exchange, Winzenburg's counsel told the District Court that Winzenburg had reconsidered his decision to proceed pro se and would like to be represented. The

District Court agreed that this decision was "the appropriate decision for [Winzenburg] to make at this point in time." The District Court also informed Winzenburg that the State will file a PFO notice that "will certainly change any sentencing options" if he was convicted. Winzenburg pleaded not guilty.

¶11 One week after the arraignment, Winzenburg appeared with counsel for a bond reduction hearing. The District Court left bond at $50,000. Subsequently, while still represented by counsel, the State filed a notice of intent to designate Winzenburg a PFO. The notice stated the penalty for a PFO—imprisonment for not less than 5 years or more than 100 years, or a fine of not less than $50,000 or both. The notice further provided that the first 5 years of the sentence could not be suspended or deferred.

¶12 On September 7, 2017, Winzenburg's counsel filed a motion to withdraw, explaining that Winzenburg wished to represent himself. The District Court held a *Faretta* hearing[2] on the motion. Once again, the District Court explained to Winzenburg, "you understand you're charged with robbery in this case, that has a sentence of not less than two years or more than 40, so you are facing a significant sentence if you were to be convicted, do you understand that?" Winzenburg affirmed, "I do." The District Court advised him about the "numerous disadvantages" of self-representation. The District Court asked Winzenburg why he wished to represent himself. Winzenburg explained that his public defender failed to meet with him after several requests because "apparently her

---

[2] *Faretta v. California*, 422 U.S. 806, 95 S. Ct. 2525 (1975); *State v. Marquart*, 2020 MT 1, 398 Mont. 233, 455 P.3d 460.

caseload [was] too full." He further expressed that "it's important that I represent myself" because she also failed to file a motion after he asked her to do so. She told him she did not file the motion because "she was on another case." After hearing his explanation, the District Court told Winzenburg that he may be able to substitute counsel if he believes that he had a breakdown in communication with his current counsel. The District Court also informed Winzenburg that if he were to proceed pro se that he would be at a significant disadvantage because he would face an experienced prosecutor at trial and must still comply with the criminal code and trial procedures. For a second time, the District Court advised Winzenburg that his maximum penalty was 40 years and the mandatory minimum remained two years. Winzenburg acknowledged the potential penalties and still confirmed he wanted to proceed without counsel.

¶13 The District Court found that Winzenburg unequivocally, knowingly, intelligently, and voluntarily waived his right to counsel, and allowed Winzenburg to represent himself with standby counsel. The District Court also told Winzenburg that it would consider his motion to dismiss that he had previously tried to file pro se. The District Court held a status hearing before trial that confirmed Winzenburg still wanted to represent himself. The court again advised him that it was in his "best interest to proceed with counsel."

¶14 At trial, Winzenburg represented himself with standby counsel. Winzenburg declined to conduct voir dire, even though the District Court offered that standby counsel could conduct voir dire. The District Court read eight preliminary jury instructions and assured the jury that it would receive written copies of all applicable laws when it

7

deliberated. The State presented evidence that Winzenburg scared Franchi and Boka while he tried to steal Franchi's car and the items in it. Winzenburg gave a brief opening statement and asked limited questions throughout the trial. Winzenburg requested that his counsel assist him with presenting segments of a dashcam video that showed Franchi's and Boka's interviews. Winzenburg did not testify and provided a brief closing argument.

¶15 The jury returned a verdict of guilty for the crime of robbery. Winzenburg received a sentence to the Montana State Prison for 20 years, with no time suspended. The District Court granted Winzenburg 216 days of credit for time served.

## STANDARD OF REVIEW

¶16 "The validity of a *Faretta* waiver is a mixed question of law and fact reviewed de novo." *State v. Barrows*, 2018 MT 204, ¶ 9, 392 Mont. 358, 424 P.3d 612. We will not presume that a defendant has waived his right to counsel. *State v. Swan*, 2000 MT 246, ¶ 17, 301 Mont. 439, 10 P.3d. 102, (citing *Brewer v. Williams*, 430 U.S. 387, 404, 97 S. Ct. 1232, 1242 (1977)). We will not disturb a district court's findings of fact regarding waiver of counsel "as long as substantial credible evidence exists to support that decision." *Marquart*, ¶ 16.

¶17 If a defendant had the opportunity to object to a jury instruction but failed to do so we will ordinarily not examine the issue unless it qualifies for plain error review. *State v. Birthmark*, 2013 MT 86, ¶ 11, 369 Mont. 413, 300 P.3d 1140. "Plain error review is used sparingly and only in situations that implicate a manifest miscarriage of justice, leave

8

unsettled the question of the fundamental fairness of the proceedings, or compromise the integrity of the judicial process." *Birthmark*, ¶ 11.

## DISCUSSION

¶18    *1. Did Winzenburg knowingly and voluntarily waive his right to counsel?*

¶19    Under the Sixth Amendment of the United States Constitution, criminal defendants have the right to "the assistance of counsel." U.S. Const. amend. VI.  The right to counsel has been incorporated to the States through the Fourteenth Amendment Due Process Clause.  *Faretta*, 422 U.S. at 818, 95 S. Ct. at 2532.  The purpose of the right to counsel is to "protect the integrity and fairness of the adversary criminal process."  *State v. Scheffer*, 2010 MT 73, ¶ 20, 355 Mont. 523, 230 P.3d 462.  The Sixth Amendment imposes "rigorous restrictions" before a defendant can waive his right to counsel at trial and acknowledges "the enormous importance and role that an attorney plays at a criminal trial."  *Patterson v. Illinois*, 487 U.S. 285, 298, 108 S. Ct. 2389, 2397 (1988).

¶20    Criminal defendants nonetheless have the right to represent themselves if they desire.  *Faretta*, 422 U.S. at 835, 95 S. Ct. at  2541;  *State v. Colt*, 255 Mont. 399, 407, 843 P.2d 747, 752 (1992).  A defendant may waive his right to counsel only if a district court finds that the waiver is made knowingly, intelligently, voluntarily, and unequivocally. *Marquart*, ¶ 28.  At a *Faretta* hearing, a defendant "should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open."  *Faretta*, 422 U.S. at 835, 95 S. Ct. at 2541 (citations omitted).  A waiver of trial counsel should "be made with apprehension

9

of the nature of the charges, the statutory offenses included within them, [and] the range of allowable punishments thereunder[.]" *Von Moltke v. Gillies*, 332 U.S. 708, 724, 68 S. Ct. 316, 321 (1948) (plurality opinion of Black, J.). The defendant should also be advised of the "possible defenses to the charges and circumstances in mitigation thereof, and other facts essential to a broad understanding of the whole matter." *Von Moltke*, 332 U.S. at 724, 68 S. Ct. at 321. However, the factors articulated in *Von Moltke*, are merely "a catalog of concerns for trial court consideration, not as a prescribed litany of questions and answers leading to mandatory reversal in the event that one or more is omitted." *Hsu v. United States*, 392 A.2d 972, 983 (D.C. App. 1978). As such, the United States Supreme Court has declined to "prescribe any formula or script to be read to a defendant who states that he elects to proceed without counsel" and has explained that the information a defendant must possess depends on "case-specific factors." *Iowa v. Tovar*, 541 U.S. 77, 88, 124 S. Ct. 1379, 1387 (2004).

¶21 In *Tovar*, the United States Supreme Court explained that the "law ordinarily considers a waiver knowing, intelligent, and sufficiently aware if the defendant fully understands the nature of the right and how it would likely apply in general in the circumstances—even though the defendant may not know the specific detailed consequences of invoking it." *Tovar*, 541 U.S. at 92, 124 S. Ct. at 1389 (quoting *United States v. Ruiz*, 536 U.S. 622, 629, 122 S. Ct. 2450, 2455 (2002)). The United States Supreme Court held that a warning regarding potential punishment satisfies the constitutional threshold "when the trial court informs the accused of the nature of the

10

charges against him, of his right to be counseled regarding his plea, and of the range of allowable punishments attendant upon the entry of a guilty plea." *Tovar*, 541 U.S. at 81, 124 S. Ct. at 1383.

¶22 The Montana Constitution guarantees that the accused in criminal prosecutions "shall have the right to appear and defend in person and by counsel." Mont. Const. art. II, § 24. We have previously established that trial courts must meaningfully engage with defendants to ensure they understand the risks associated with waiving counsel. *Colt*, 255 Mont. at 407, 843 P.2d at 752. However, we have declined to "require district courts to adhere to a rigid set of requirements in ascertaining whether a defendant in a criminal proceeding has made a knowing and intelligent waiver of his right to counsel." *Colt*, 255 Mont. at 406, 843 P.2d at 751. We defer to district courts to determine whether the defendant has waived his right to counsel knowingly and intelligently because the district court is in the best position to make such a determination. *Colt*, 255 Mont. at 406, 843 P.2d at 751. We have declined to adopt the Ninth Circuit's test regarding waiver of counsel, which requires a district court to ensure that the defendant "understands 1) the nature of the charges against him, 2) the possible penalties, and 3) the dangers and disadvantages of self-representation." *United States v. Erskine*, 355 F.3d 1161, 1167 (9th Cir. 2004) (citations omitted). Mandating that district courts "specifically discuss the dangers and disadvantages of pro se representation is far beyond the scope of what *Faretta* or our case law requires." *Colt*, 255 Mont. at 407, 843 P.2d at 751. *Faretta* merely requires that the accused "be made aware of the dangers and disadvantages of self-representation."

11

*Colt*, 255 Mont. at 407, 843 P.2d at 751; *Faretta*, 422 U.S. at 835, 95 S. Ct. at 2541. We will not disturb a right to counsel waiver on appeal "so long as substantial credible [evidence] exists to support the decision of the District Court that the defendant made a voluntary, knowing, and intelligent waiver." *Colt*, 255 Mont. at 407, 843 P.2d at 752.

¶23 On appeal, Winzenburg argues that his "risk analysis would have been different" when deciding to represent himself because he did not understand the actual severity of the charges and its range of potential penalties. He asserts that the District Court failed to satisfy the "stricter and higher standard" required by the Montana Constitution because it advised him of the "wrong" potential penalties when it told him that he faced a two-year mandatory minimum for the penalty for robbery rather than the five-year mandatory minimum for the PFO penalty. Winzenburg contends that had he been so advised; he would not have waived his right to counsel.

¶24 We do not apply the same rigid standard for waiver of counsel as the Ninth Circuit. We require that defendants understand the "range of allowable punishments" and "be made aware of the dangers and disadvantages of self-representation . . ." *Colt*, 255 Mont. at 407, 843 P.2d at 751 (quoting *Faretta*, 422 U.S. at 835, 95 S. Ct. at 2541). The District Court held several colloquies with Winzenburg about the "dangers" of self-representation and the numerous benefits and rights he was relinquishing if he were to proceed without counsel. The District Court advised him of the "inherent disadvantages" of self-representation— that without any formal legal training, he would be prosecuted by attorneys "who have extensive experience in this area of the law" and that he would have to "strictly" comply

12

with the criminal code and rules of criminal procedure. He told the District Court that he understood these risks. The District Court also advised him that he was charged with robbery, which included the penalty of "a term in the State prison of not less than two years or more than 40 years." When the District Court accepted his not guilty plea, it informed Winzenburg that the sentencing options would change once the State filed the PFO notice.

¶25 Additionally, the State indicated at Winzenburg's arraignment that it was going to file a notice of intent to designate him a PFO. When the State filed the PFO notice, Winzenburg was represented by counsel. The notice informed Winzenburg that he qualified as a PFO and stated the penalty if he were convicted—imprisonment for not less than 5 years or more than 100 years, and the first 5 years could not be deferred or suspended. After receiving the PFO notice of an enhanced penalty, Winzenburg nonetheless renewed his motion to proceed pro se. Importantly, the twenty year sentence that was imposed by the District Court fell well under the maximum sentence the District Court could have imposed for robbery—forty years—and was similarly well under what Winzenburg could have received as a PFO.

¶26 Based on this record, we conclude Winzenburg's waiver of counsel was voluntarily, knowingly, intelligently, and unequivocally entered. He understood the risks associated with self-representation and the full range of potential penalties after the District Court's numerous advisements and the State's filing of a PFO notice indicating the enhancement of penalties.

¶27    2.    *Should this Court exercise plain error review to address Winzenburg's unpreserved claim that the District Court should have given a specific unanimity instruction?*

¶28    Winzenburg argues that his right to a unanimous jury verdict was compromised when the District Court did not give a specific unanimity instruction requiring the jury to agree that either or both victims were in fear of immediate bodily injury.  Winzenburg failed to raise this issue before the District Court.

¶29    When a party fails to object to jury instructions in the district court and declines to request a specific unanimity instruction, the party has failed to preserve his argument for appeal.  *State v. Harris*, 1999 MT 115, ¶¶ 10-11, 294 Mont. 397, 983 P.2d 881.  We have previously established that to properly preserve an issue or argument for appeal, a party must raise it in the district court.  *State v. Rosling*, 2008 MT 62, ¶ 76, 342 Mont. 1, 180 P.3d 1102.  An issue or claim must be timely raised in the first instance in the trial court because "it is fundamentally unfair to fault the trial court for failing to rule correctly on an issue it was never given the opportunity to consider."  *State v. West*, 2008 MT 338, ¶ 16, 346 Mont. 244, 194 P.3d 683 (citations omitted).

¶30    Winzenburg and the State proposed the same jury instructions, which did not include a specific unanimity instruction.  Winzenburg never argued that he should have received a specific unanimity instruction in addition to the general unanimity instruction. The jury received a general unanimity instruction stating that "[t]he law requires the jury verdict in this case to be unanimous."  We are not convinced that the jury was not fully and adequately instructed and decline to exercise plain error review.  *See State v. Mathis*, 2022

MT 156, ¶ 42, 409 Mont. 348, 515 P. 3d 758. Winzenburg failed to object to this instruction and has waived this argument for appellate review.

**CONCLUSION**

¶31     We conclude Winzenburg knowingly and voluntarily waived his right to counsel. The District Court advised him numerous times about the penalties he faced and dangers of self-representation.   The State's PFO notice informed him of the enhanced penalty associated with PFO status.   We decline to exercise plain error review to address Winzenburg's request for a specific unanimity instruction because he did not preserve it for appeal.

¶32     Affirmed.

/S/ LAURIE McKINNON

We Concur:

/S/ MIKE McGRATH
/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER
/S/ INGRID GUSTAFSON