FILED

12/16/2025

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 24-0137

DA 24-0137

IN THE SUPREME COURT OF THE STATE OF MONTANA

2025 MT 286

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

DAVID WARREN LAMBERT,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Ninth Judicial District,
In and For the County of Pondera, Cause No. DC-06-23
Honorable Gregory L. Bonilla, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          James C. Murnion, Murnion Law, Missoula, Montana

      For Appellee:

          Austin Knudsen, Montana Attorney General, Roy Brown, Assistant
Attorney General, Helena, Montana

          Shari M. Lennon, Pondera County Attorney, Conrad, Montana

Submitted on Briefs:  October 22, 2025

Decided:  December 16, 2025

Filed:

_____
Clerk

Justice Katherine Bidegaray delivered the Opinion of the Court.

¶1     This appeal arises from the Montana Ninth Judicial District Court, Pondera County, following the revocation of David Warren Lambert's suspended sentence and his resentencing to five years in the Montana State Prison, imposed at a revocation disposition hearing conducted without counsel and without any waiver of counsel on the record.  We reverse and remand.

¶2     On appeal we restate and address the following issues:

> 1. *Whether the District Court erred by conducting the revocation dispositional hearing with Lambert unrepresented and without a valid waiver of counsel.*
>
> 2. *If the District Court erred, whether the error was structural or subject to harmless error review, and, if the latter, whether Lambert has shown prejudice.*
>
> 3. *Whether Lambert is entitled, on this record, to withdraw his admission to failing to register "as required" considering* State v. Hinman.

¶3     On appeal, Lambert argues that the District Court erred by conducting the revocation dispositional hearing without counsel present and without obtaining a valid waiver of his right to counsel.  He further contends that the resulting error is structural and independently prejudicial, and he alternatively seeks to withdraw his earlier admission to failing to register as a sexual offender considering *State v. Hinman*.  We reverse and remand for a new dispositional hearing with counsel or a knowing, intelligent, voluntary, and unequivocal waiver of the right to counsel.  We decline to resolve Lambert's request to withdraw his admission because the record is insufficiently developed to determine the statutory basis for his registration duty or whether *Hinman* affects it.

## FACTUAL AND PROCEDURAL BACKGROUND

¶4 In December 2006, the State charged David Warren Lambert with felony burglary and felony theft for breaking and entering a bar in Brady, Montana. In June 2007, Lambert entered a guilty plea to felony burglary. On November 5, 2007, Lambert was sentenced to twenty years in the Montana State Prison with five years suspended, subject to numerous conditions. Lambert was released on parole in June 2016 and began the suspended portion of his sentence in October 2022.

¶5 On January 13, 2023, the State filed a Petition to Revoke Suspended Sentence alleging six probation violations, including failure to register as a sex offender as required under a separate conviction.

¶6 On January 17, 2023, the District Court ordered the Office of the State Public Defender (OPD) to assign counsel to represent Lambert in the proceeding. On February 21, 2023, OPD attorney Fernando Terrones appeared as counsel for Lambert at his initial appearance. Lambert denied all allegations. At a March 20, 2023 adjudicatory hearing, Lambert—still represented by Terrones—admitted he failed to register as a sex offender. The State declined to pursue the remaining alleged violations. The District Court accepted Lambert's admission and revoked his suspended sentence. The District Court set a dispositional hearing for April 3, 2023. At the time set for hearing, Lambert requested a continuance to retain private counsel, and the court continued the hearing to May 1, 2023.

¶7 At the May 1, 2023 hearing, Lambert reported to the court that he had been unsuccessful in retaining counsel. Lambert explained that he had fallen off a bunk at the jail, injured his face, and was unable to follow up with the firm he had intended to hire.

Lambert also claimed he contacted another attorney but "didn't find out until Friday" that this attorney would not take his case. The District Court inquired whether Terrones was present on Lambert's behalf. Terrones advised the court that Lambert did not want his representation and that Lambert was actively seeking private counsel. The District Court addressed Lambert directly:

> THE COURT: Well, let me tell you something, Mr. Lambert. You have an attorney here today, um, willing to represent you. You may or may not be successful in retaining a private attorney. Um, and if you're not, you're going to be pro se, um, which means you won't have an attorney, um, because this—we're not going to continue this forever. We're not going to keep doing that. Do you understand that?
>
> . . .
>
> MR. DAVID LAMBERT: I promise you, I will have private counsel this week. I've got a friend helping me out . . . and I will have an attorney this week.

¶8 The court granted one final continuance to May 15, 2023, informing Lambert that "we're going to proceed no matter what at that particular point in time."

¶9 On May 15, 2023, after the District Court had granted Terrones' motion to withdraw, Lambert appeared at the dispositional hearing without counsel and informed the court that he had contacted OPD for reappointment of a public defender, but no attorney had yet been assigned. The court conducted no colloquy regarding Lambert's understanding of his right to counsel or the risks of proceeding without representation. Instead, the court stated: "Kay. Um, and, uh, I have granted Mr. Terrones's Motion to Withdraw, and so, um, it's unfortunate you weren't able to find counsel, but as I indicated a couple of weeks ago, we're going to go ahead and proceed," and moved directly into the

4

dispositional hearing.  Both the State and probation officer recommended revocation of the entire five-year suspended term.  Lambert, representing himself, apologized and spoke at length, explaining his intent to comply and his recent employment and business efforts. During this statement, Lambert acknowledged that he "didn't tell you I was changing my address" and described a charge for "accidentally calling my ex-wife" that was "a total accident."[1]  The court nonetheless imposed a sentence of five years to the Montana State Prison, citing Lambert's "admission of the violation of several conditions."  The written Order Revoking Suspended Sentence and Imposing New Sentence was issued May 22, 2023.

¶10    Lambert timely appealed, arguing that he was not represented by counsel at the dispositional hearing; that he did not knowingly, voluntarily, intelligently, and unequivocally waive his right to counsel; that he was prejudiced by not being represented by counsel; and that, if this Court does not outright order dismissal of the Petition to Revoke as in *State v. Fry*, 197 Mont. 354, 642 P.2d 1053 (1982), it should permit Lambert to withdraw his admission due to a change in the law after his sentencing.  The State responded that the District Court properly exercised its discretion to appoint counsel for Lambert after making an indigency determination, that Lambert was not denied any constitutional right to counsel during his probation revocation, and that Lambert is not entitled to withdraw his admission for failing to register as a sexual offender.

---

[1] Failure to notify probation of change of address and violation of a protection order prohibiting contact with his wife were originally alleged as probation violations, but the State chose to abandon those alleged violations at the adjudicatory hearing after Lambert admitted the failure to register as a sexual offender.

5

## STANDARD OF REVIEW

¶11 Structural error is "automatically reversible" where the framework of the proceeding is affected, including the total denial of counsel at a critical stage. *State v. Van Kirk*, 2001 MT 184, ¶¶ 38-39, 306 Mont. 215, 32 P.3d 735 (citing *Gideon v. Wainwright*, 372 U.S. 335 (1963)). Waiver of counsel must be knowing, intelligent, voluntary, and unequivocal, and courts must "meaningfully engage" the defendant before accepting it. *State v. Winzenburg*, 2022 MT 242, ¶¶ 20-22, 411 Mont. 65, 521 P.3d 752. Montana statutes governing revocation expressly secure the right to be represented by counsel at the revocation hearing. Section 46-18-203(4)(d), MCA.

## DISCUSSION

¶12 *1. Whether the District Court erred by conducting the revocation dispositional hearing with Lambert unrepresented and without a valid waiver of counsel.*

¶13 We have held that "[a] defendant is entitled to assistance of counsel, either retained or appointed, at a hearing on revocation of probation and resentencing. Unless the record reflects a valid waiver of the right to counsel, a lawyer must be afforded at a sentencing hearing regardless of whether the hearing is labeled a revocation of probation or a deferred sentencing." *Fry*, 197 Mont. at 357, 642 P.2d at 1054. That principle remains binding. Section 46-18-203(4)(d), MCA, codifies due process protections for revocation hearings and provides that an offender must be informed of "the right to be represented by counsel at the revocation hearing pursuant to Title 46, chapter 8, part 1." The statute expressly recognizes the right to counsel at revocation hearings and directs the courts to the appointment-of-counsel provisions in Title 46, chapter 8. This statutory guarantee is not

discretionary; it presupposes representation at the revocation hearing unless validly waived consistent with § 46-8-102, MCA.

¶14 Although § 46-8-104, MCA, articulates the general process for appointing counsel in postconviction proceedings, it does not limit the Legislature's explicit guarantee of representation at revocation hearings in § 46-18-203(4)(d), MCA. Once the District Court determined Lambert was indigent and appointed OPD, that statutory right attached unless validly waived.

¶15 The State argues that Lambert's entitlement to counsel is governed exclusively by the case-by-case due process framework of *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S. Ct. 1756 (1973), which limits the constitutional right to counsel in revocation proceedings. The State contends that, because Lambert admitted to a violation while represented by counsel at the adjudicatory hearing, no further right to counsel attached at the dispositional hearing. This argument conflates the minimum floor of federal due process with Montana's statutory framework and our precedent established in *Fry*.

¶16 While *Gagnon* establishes the minimum federal constitutional requirements for revocation proceedings under the Due Process Clause, it does not preclude states from providing greater protections. Montana has chosen to do so through statute and decisional law. Section 46-18-203(4)(d), MCA, guarantees "the right to be represented by counsel at the revocation hearing," not merely just at the adjudicatory phase. A revocation hearing encompasses both the adjudication of violations and the determination of an appropriate sanction. *See Black v. Romano*, 471 U.S. 606, 612, 105 S. Ct. 2254 (1985) (recognizing

that revocation proceedings involve both "the decision to revoke" and the consequent decision regarding "the appropriate sanction").

¶17 Moreover, *Fry* makes clear that appointed counsel must be provided "at a sentencing hearing" in a revocation proceeding absent a valid waiver. The dispositional hearing here was precisely that—a sentencing at which the District Court determined whether to reimpose all, some, or none of Lambert's five-year suspended sentence. This determination required consideration of factors beyond the fact of the violation, including Lambert's conduct during supervision, mitigating circumstances, and the propriety of alternative sanctions. An indigent defendant facing potential reimprisonment is entitled to the assistance of counsel in presenting evidence and argument on these matters.

¶18 "A defendant may waive his right to counsel only if a district court finds that the waiver is made knowingly, intelligently, voluntarily, and unequivocally." *Winzenburg*, ¶ 20. "Trial courts must meaningfully engage with defendants to ensure they understand the risks associated with waiving counsel." *Winzenburg*, ¶ 22. The burden is on the State to establish a valid waiver; we "will not presume that a defendant has waived his right to counsel." *Winzenburg*, ¶ 16.

¶19 The record here contains no indication that Lambert waived his right to counsel. To the contrary, Lambert consistently sought to be represented. When his first two attempts to retain private counsel failed, Lambert specifically informed the District Court at the May 15 hearing that he had "called the Office of Public Defender" and they "had somebody, hopefully, lined up." This statement demonstrates Lambert's continued desire for legal representation—not a waiver of counsel.

8

¶20 The District Court did not inquire whether Lambert understood the consequence of proceeding without counsel. It conducted no colloquy regarding the risks of self-representation. It made no findings that Lambert knowingly, voluntarily, intelligently, and unequivocally waived his right to counsel. Instead, the court simply stated, "it's unfortunate you weren't able to find counsel, but as I indicated a couple of weeks ago, we're going to go ahead and proceed." This statement, following no meaningful engagement with Lambert about waiver, cannot satisfy constitutional and statutory requirements.

¶21 The State argues that Lambert "voluntarily dismissed his assigned counsel" and therefore "opted to proceed pro se." This characterization misreads the record. Lambert did not affirmatively choose to proceed without representation. Rather, he sought to replace Terrones with retained counsel—an option the District Court permissibly allowed. When Lambert's efforts to retain counsel proved unsuccessful, he took the affirmative step of contacting OPD to request reappointment of counsel before the dispositional hearing—conduct inconsistent with waiving the right to counsel and instead consistent with actively seeking counsel.

¶22 The State further relies on *State v. Lange*, 226 Mont. 9, 733 P.2d 846 (1987), arguing it is controlling. The State's reliance on *Lange* is misplaced. When *Lange* was decided, Montana's statutory framework did not contain the explicit guarantee of a right to counsel at a revocation hearing that the Legislature later enacted in § 46-18-203(4)(d), MCA. The Court in *Lange* therefore analyzed the defendant's request for different counsel under a materially different statutory regime, and its reasoning rested on the presence of appointed

9

counsel who remained available to continue representation. Here, by contrast, no appointed counsel was present; Lambert sought reappointment; and the court conducted no waiver inquiry. Under today's statute, the right to representation at a revocation hearing exists unless the defendant validly waives that right. The reasoning in *Lange* does not control this case.

¶23 Additionally, in *Lange,* the defendant rejected court-appointed counsel for the revocation hearing when that counsel was present and available to represent him. *Lange*, 226 Mont. at 13, 733 P.2d at 849. The Court noted that "when court-appointed counsel is rendering effective assistance, the defendant has the choice of (1) continuing with the counsel so appointed, or (2) having his counsel dismissed and proceeding on his own, pro se." *Lange,* 226 Mont. at 13, 733 P.2d at 849. The key fact in *Lange* was that appointed counsel was present at the hearing and available to represent the defendant, who then chose to proceed without him.

¶24 Here, by contrast, no appointed counsel was present at Lambert's dispositional hearing. Terrones had been permitted to withdraw two weeks earlier at Lambert's request so Lambert could seek private counsel. When that effort failed and Lambert requested OPD reappointment, the District Court did not grant the request or otherwise ensure representation. Lambert was thus not presented with the choice *Lange* describes—whether to proceed with available appointed counsel or pro se. Instead, Lambert requested counsel, counsel was not provided, and the court compelled him to proceed without representation.

¶25 The State suggests that once Lambert declined representation by Terrones at the May 1 hearing, he forfeited any further entitlement to appointed counsel. This

10

interpretation would create an arbitrary and inequitable rule under which an indigent defendant who makes a good faith effort to retain private counsel—a constitutionally protected option—would lose the right to appointed counsel if those efforts ultimately fail. Nothing in Montana law supports such a rule.

¶26 Section 46-8-103, MCA, provides that court-appointed counsel must represent the defendant in the proceedings until final judgment, unless sooner relieved by court order for good cause shown. Here, Terrones was relieved for good cause—to permit Lambert's pursuit of retained counsel. But the statute contemplates that defendants remain entitled to representation until final judgment. When Lambert's efforts to secure private representation failed, his statutory entitlement to appointed counsel remained intact. Although the court retains discretion under § 46-8-104, MCA, to reappoint counsel when appropriate, that discretion must be exercised consistently with the statutory guarantee in § 46-18-203(4)(d), MCA, and Lambert's indigency determination, his renewed request for counsel, and the sentencing nature of the hearing required the court to ensure representation unless validly waived.

¶27 For these reasons, and consistent with § 46-18-203(4)(d), MCA, as well as our decisions in *Fry* and *Winzenburg*, we conclude that the District Court erred when it resentenced Lambert without counsel and without obtaining a valid waiver. This conclusion accords with principles of rule of law and fundamental fairness: although the State has an interest in the efficient administration of revocation proceedings, that interest cannot supersede the statutory and precedential requirement that an indigent defendant

11

be represented—or validly waive representation—before a court may impose a liberty-depriving sentence.

¶28    *2. If the District Court erred, whether the error was structural or subject to harmless error review, and, if the latter, whether Lambert has shown prejudice.*

¶29    The deprivation of counsel at a critical stage of a proceeding constitutes structural error requiring reversal. *Van Kirk*, ¶¶ 38-39. Sentencing is a critical stage. *Van Kirk*, ¶ 39. The complete denial of counsel at sentencing or resentencing falls within Montana's structural error category. That approach hews to *Fry* and *Van Kirk* and honors stare decisis while providing administrable guidance to trial courts.

¶30    Even if we were to examine the record for prejudice, Lambert was demonstrably harmed by proceeding without counsel at his dispositional hearing. At the May 15, 2023 hearing, representing himself, Lambert made statements that amounted to admissions of additional violations never proven by the State. He stated, "I'm very sorry for—I didn't tell you I was changing my address," thereby admitting to the allegation that he failed to report his address to his probation officer. He also stated, "The charge I had for accidentally calling my ex-wife was brought in April because it was a total accident," thereby acknowledging conduct asserted in the Addendum—contacting a protected person. No attorney would have permitted Lambert to make these admissions regarding violations that were not at issue following the adjudicatory hearing at which he admitted only to failing to register as a sex offender. Critically, the District Court's oral ruling explicitly relied on these multiple, previously unproven admissions. The court stated it was reimposing the full five-year suspended term—the most severe sanction available—"being

12

that we have an admission of the violation of several conditions." Thus, the court resentenced Lambert based, at least in part, on violations he admitted only after being compelled to proceed without the benefit of counsel at the dispositional hearing. This demonstrates concrete prejudice flowing directly from the absence of representation. Because only one violation had been adjudicated or admitted with counsel present, any sentencing determination based on additional admissions offered while unrepresented exceeded the proper scope of the revocation proceeding and independently prejudiced Lambert.

¶31 Any competent attorney would have advised Lambert to confine his statements to matters relating to the single violation he had admitted with counsel present—failure to register as a sex offender. Counsel could have presented evidence and argument regarding Lambert's overall adjustment to supervision, mitigating factors, and the appropriateness of a lesser sanction, and could have shielded Lambert from inadvertently admitting additional violations. Lambert was denied assistance at a critical stage—a structural error—and, even under a harmless error analysis, he was prejudiced.

¶32 *3. Whether Lambert is entitled, on this record, to withdraw his admission to failing to register "as required" considering* State v. Hinman*.*

¶33 Lambert asks, in the alternative, to withdraw his March 20, 2023 admission to failing to register "as required," invoking *State v. Hinman*, 2023 MT 116, 412 Mont. 434, 530 P.3d 1271, which held that post-2007 amendments to Montana's Sexual or Violent Offender Registration Act operate as punishment and apply prospectively. The State counters with preservation and briefing arguments, with reliance on *State v. Andrews*,

13

2010 MT 154, 357 Mont. 52, 236 P.3d 574, and with the assertion that the 2005 address change duty also fits the facts.

¶34 On this appellate record, the *Hinman* question is insufficiently developed and presents a mixed question of fact and law. The record does not clearly delineate the precise statutory duty Lambert violated, whether that duty derived from pre-2007 or post-2007 provisions, or the scope of his admission. *Andrews* adopts *Brady v. United States*, 397 U.S. 742, 90 S. Ct. 1463 (1970), for the principle that later changes in the law ordinarily do not undo prior voluntary pleas or admissions entered under then-existing law. Moreover, as we recognized in *Andrews,* ¶ 13, a defendant's admission is assessed under the law existing at the time it was made, and later judicial developments generally do not render such admissions involuntary. On this record, the necessary factual predicates for determining whether *Hinman* affects the statutory duty Lambert admitted violating are absent. Absent targeted district court findings and a squarely preserved claim, the prudent course is to decline to decide withdrawal on the merits.

¶35 If Lambert believes *Hinman* negates the specific duty underlying his admission, he may raise that contention on remand, if material to disposition, or in an appropriate, record-developing proceeding, where the court can identify the exact statutory duty violated and apply *Hinman* accordingly.

**CONCLUSION**

¶36 Because Lambert did not validly waive his right to counsel and was deprived of representation at a critical stage, we vacate the disposition and remand for a new hearing at which Lambert is represented or validly waives representation. On remand, the District

14

Court may rely only on violations that were properly admitted or proven, and it may not use Lambert's uncounseled statements from the prior hearing against him. We decline to address Lambert's request to withdraw his admission under *Hinman* on this record, without prejudice to raising it if appropriate on remand.

/S/ KATHERINE M. BIDEGARAY

We Concur:

/S/ BETH BAKER
/S/ INGRID GUSTAFSON
/S/ JIM RICE

Justice Laurie McKinnon has recused herself and took no part in these proceedings.

Justice Jim Rice, concurring.

¶37    I agree with the Court's holding, including that the right to retain private counsel is "a constitutionally protected option." Opinion, ¶ 25. I would add that this protection is not absolute, and that a defendant cannot utilize it merely to manufacture delay or otherwise impede the trial process. *See State v. Garcia*, 2003 MT 211, ¶ 32, 317 Mont. 73, 75 P.3d 313 ("If the court finds that the delay is an attempt to manipulate a trial, or causes prejudice to the prosecution, or creates difficulties for the trial court, the trial court may interfere with the defendant's right to counsel . . . and require the case to proceed.") (citation omitted). In the context of a request for a continuance to seek private counsel, we have required defendants to make a "good faith, diligent effort to obtain substitution of counsel before the scheduled trial date." *Garcia*, ¶¶ 15-16, 21; *see also* § 46-13-202(3), MCA (requiring

15

requests for a continuance to be considered "in the light of the diligence shown on the part of the movant"). Even assuming a diligent, good faith request, a district court is under no obligation to relieve the defendant's public counsel "to permit [the defendant's] pursuit of retained counsel," Opinion, ¶ 26, as occurred here, but can require that public counsel continue representation in the meantime, including being ready to proceed at trial or hearing in the event defendant's desire to retain private counsel fails to materialize. *Garcia*, ¶ 32 ("This does not mean that a trial court cannot tightly control its own docket, or that its assignment of cases can be manipulated by defense counsel and defendants.") (citation omitted). Here, the District Court honored Lambert's requests for additional time to attempt to secure private counsel, but did so without contingency control that would have allowed the hearing to go forward with appointed public counsel in the event Lambert failed to retain counsel. The District Court thus boxed itself into a corner where Lambert's request to proceed with public counsel left it unable to proceed with the hearing. While Lambert may also have wanted different public counsel, that is a different issue and may not have been a sustainable request upon a "*Gallagher*" inquiry. *See State v. Gallagher*, 2001 MT 39, ¶ 9, 304 Mont. 215, 19 P.3d 817; *see also State v. Johnson*, 2019 MT 34, ¶ 21, 394 Mont. 245, 435 P.3d 64. A defendant is not entitled to public counsel of his choice. *State v. Aguado*, 2017 MT 54, ¶ 23, 387 Mont. 1, 390 P.3d 628 ("the right to assistance of [public] counsel does not grant defendants the right to counsel of their choice") (citation omitted).

/S/ JIM RICE